## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANO,

     Plaintiff,

v.                                                          **2:24-cv-590 GJF-KRS**

LIBERTY MUTUAL GROUP, INC.,
a Massachusetts corporation,

     Defendant.

### MOTION TO DISMISS BY DEFENDANT LIBERTY MUTUAL GROUP, INC.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant, Liberty Mutual Group, Inc. ("**Liberty**" or "**Defendant**"), by and through its undersigned counsel of record, Allen Law Firm, LLC moves to dismiss Plaintiff, Ruben Escano's ("**Plaintiff**"), Complaint against Liberty for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "**TCPA**").

### BACKGROUND

Plaintiff alleges that from May 13, 2020 to February 5, 2021, he received at least thirteen (13) automatically dialed and unsolicited telephone calls to his cell number. *See* Complaint. However, as to these alleged 13 calls, Plaintiff fails to allege any facts that might plausibly lead to the conclusion that Liberty directly made, or had any involvement in making, the calls. Plaintiff also claims that Defendant "engaged an agent" to place these calls and sell Defendant's vehicle service contracts ("**VSC**") but fails to identify sufficient facts that plausibly support the conclusion that the calls were sent by agents or entities while they were acting as authorized agents of Liberty at Liberty's request and under Liberty's direction and control.

Furthermore, the allegations set forth in the instant lawsuit were the subject of a prior lawsuit filed by Plaintiff against Liberty and other Defendants. *See Escano v. Concord Auto*

*Protect, Inc., et al*, CV No. 21-223 MV/CG ("**2021 Lawsuit**").  The district court dismissed the 2021 Lawsuit and entered its Amended Judgment [Doc. 120] after the Tenth Circuit entered its Order and Judgment affirming the district court's dismissal of claims against Liberty in *Escano v. Concord Auto Protect, Inc.*, No. 22-2096, 2023 WL 4247703 (10th Cir. June 29, 2023).

Pursuant to Fed. R. Civ. P. 12(b)(6), the Complaint should be dismissed in its entirety against Liberty and Liberty seeks costs and fees incurred in filing this Motion.

### PLAINTIFF'S ALLEGATIONS IN THE INSTANT LAWSUIT

Plaintiff filed this instant lawsuit in the Sixth Judicial District Court on or about May 9, 2024.  [Doc. 1-1].  The Sixth Judicial District Court issued its summons on May 9, 2024.  *Id.* Liberty removed this matter to this district on June 10, 2024 [Doc. 1] pursuant to federal question jurisdiction.  In his Complaint, Plaintiff alleges that between May 13, 2020 and February 5, 2021, he received at least 13 automatically dialed and unsolicited telephone calls to his cell phone ending in -8938.  *See* Comp. ¶ 18 [Doc. 1-1].  Plaintiff generally alleges that these calls were made to offer Defendant's VSC.  Comp. ¶ 21, *id*.  Plaintiff claims that during at least one call, he spoke to a representative who said he was calling from Liberty, worked for Liberty and the VSC he was offering was from Liberty.  Comp. ¶ 22, *id*.  Plaintiff alternatively alleges that Liberty is vicariously liable for the calls at issue because Liberty allegedly engaged with an agent to place the calls and sell VCS products.  Comp. ¶ 26, *id*.

Nowhere in the Complaint, however, does Plaintiff allege any facts plausibly connecting these alleged 13 calls to Liberty.  *See generally*, Comp. [Doc. 1-1].  Instead, Plaintiff makes only unsupported, conclusory allegations, without any factual basis, that one of the 13 calls was made by someone calling from Liberty or worked for Liberty, Comp. ¶ 22, *id.*, which fact is contradicted by his other allegations.  *Id*., ¶¶ 44-60, *id*.  Plaintiff also concludes that the "content of the calls

was substantially similar" enough that "a reasonable person would identify the calls as coming from the same entity." *Id*. ¶¶ 24-25, *id*.  However, Plaintiff alleges no facts upon which he bases that conclusion (for example, the content of each of the alleged call).  Aside from the allegation that one call was made by someone associated with Liberty which fact is contradicted elsewhere, Plaintiff's efforts to tie Liberty to the remaining twelve calls rest only on conclusory allegations unsupported by facts.  As noted above, Plaintiff concludes that the "content of the calls was substantially similar" enough that "a reasonable person would identify the calls as coming from the same entity." *Id*. ¶¶ 24-25, *id*.  Again, Plaintiff alleges no facts from which one could draw that conclusion (for example, what these alleged calls were about).  Plaintiff alleges that these 13 calls were dialed with an automatic telephone dialing system ("ATDS").  *Id.*, ¶ 33.  Plaintiff further alleges and concludes that:

- Defendant called Plaintiff from number 435-291-3873 on May 13, 2020.  *Id*. ¶ 44,

- Defendant called Plaintiff from number 435-222-1105 on July 27, 2020.  *Id*. ¶ 45.  Plaintiff alleges that he heard a digital beep inconsistent with an ordinary non automatically dialed call on January 27, 2020.  *Id*. ¶ 46,

- Defendant called Plaintiff from 970-233-3980 on October 2, 2020.  *Id*. ¶ 47,

- Defendant called Plaintiff from 435-786-9954 on October 13, 2020.  *Id*. ¶ 48,

- Defendant called Plaintiff from 201-270-0739 on October 24, 2020.  *Id*. ¶ 49,

- Defendant called Plaintiff from 850-312-7212 on November 23, 2020.  *Id*. ¶ 50,

- Defendant called Plaintiff from 201-357-3575 on December 1, 2020.  *Id*. ¶ 51,

- Defendant called Plaintiff from 435-265-1187 on December 22, 2020.  *Id*. ¶ 52,

- Defendant called Plaintiff from 201-554-0993 on January 4, 2021.  *Id*. ¶ 53,

- Defendant called Plaintiff from 435-246-2569 on January 5, 2021.  *Id*. ¶ 54,

- Defendant called Plaintiff from 802-348-5631 on January 7, 2021. *Id*. ¶ 55. During this call, Plaintiff allegedly heard at least two seconds of silence at the beginning of the call after he said hello. *Id*. ¶ 56,

- Defendant called Plaintiff from 435-246-2053 on January 19, 2021. *Id*. ¶ 57. During this call, Plaintiff allegedly heard at least two seconds of silence at the beginning of the call after he said hello. *Id*. ¶ 58,

- Defendant called Plaintiff from 385-254-0688 on January 26, 2021. *Id*. ¶ 59. During this call, Plaintiff allegedly heard at least two seconds of silence at the beginning of the call after he said hello. *Id*. ¶ 60.

Given the breadth of Plaintiff's unsupported legal conclusions as to Liberty's involvement in the above referenced calls, as important as what *is* alleged in the complaint is what is *not* alleged. Indeed, nowhere in the Complaint does Plaintiff allege any of the sort of *facts* needed to establish that Liberty is directly liable for the alleged calls (like facts establishing that Liberty directly made any of the calls other than one alleged call) or that Liberty should be held vicariously liable for the alleged conduct of an unknown Agent in allegedly making the calls (like facts establishing that Liberty controlled or directed this Agent's activities).

## PLAINTIFF'S ALLEGATIONS IN THE 2021 LAWSUIT

On February 10, 2021, Plaintiff Ruben Escano, filed his Complaint in the Sixth Judicial District Court, County of Grant, New Mexico, against Concord Auto Protect, Inc, ForeverCar, LLC, Liberty Mutual Group, Inc. and Liberty Mutual Auto and Home Services, LLC, Alon Salman and Does 1-0. The 2021 Lawsuit was removed by the Liberty Defendants on March 12, 2021, to this Court under Case 2:21-cv-00223 MV-GJF [Doc 1].

In the 2021 Lawsuit, Plaintiff alleged that between February 20, 2020, and February 5, 2021, Defendant ForeverCar used automatic telephone dialing systems ("**ATDS**") to call him at least 13 times, and Defendants Concord and Salman used ATDS to text him at least 22 times. Plaintiff alleged that Liberty was directly and vicariously liable for violations under the TCPA and sought $61,500 in statutory damages, trebled to $184,500.  *See* [Doc. 1-1] Case 2:21-cv-00223 MV-GJF.  Liberty filed its Rule 12(b)(6) motion to dismiss for failure to state either a direct or vicarious liability claim [Doc. 19].  The district court held that Plaintiff failed to allege enough facts to find Liberty directly or vicariously liable for the other defendants' actions.  [Doc. 80, pp 11-15].  Plaintiff filed his appeal to the Tenth Circuit and the Tenth Circuit issued its Order and Judgment affirming the district court's dismissal of the claims against Liberty and ForeverCar. *See Escano v. Concord et al*, No. 22-2096, 2023 WL 4247703 (10th Cir. June 29, 2023).  The case was remanded and the district court entered its Amended Judgment, noting in part, that Plaintiff's claims against Liberty Mutual Group, Inc. were dismissed with prejudice [Doc. 120].

## STANDARD OF REVIEW

Fed. R. Civ. P. Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (internal citations omitted).  The complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the plaintiff's favor.  *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-

pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006))).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.  To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

## ARGUMENT AND AUTHORITIES

### I.   PLAINTIFF'S CLAIMS ARE BARRED UNDER RES-JUDICATA AND COLLATERAL ESTOPPEL.

#### a.   *Res judicata:*

"Res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Northern Natural Gas Co. v. Grounds*, 931 F.2d 678, 681 (10th Cir. 1991) (citation omitted).  Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Under federal law, res judicata, also known as claim preclusion, requires satisfaction of the following elements: "(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006), *quoting Yapp v. Exel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999).  In other words, "[a] claim is

barred by res judicata when the prior action involved identical claims and the same parties or privies." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (citation omitted).

Res Judicata bars re-litigation of not only the issues that were actually decided in the prior litigation, but also issues that could have been raised in the prior litigation. *Id.*, 978 ("Res judicata […] precludes the parties or their privies from relitigating the issues that were decided or issues that could have been raised in the earlier action.") (citation omitted).  "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citation omitted).  *See also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.5 (1979) (stating that res judicata bars re-litigation in a second suit of the same cause of action by the same parties or their privies).

Claim preclusion forces a plaintiff "to explore all of the facts, develop all the theories, and demand all the remedies in the first suit" that pertain to a particular transaction or series of related transactions forming the basis of a plaintiff's claims.  *See Stone v. Dep't of Aviation*, 453 F.3d 1271, 1279 (10th Cir. 2006), *quoting* 18 FEDERAL PRACTICE AND PROCEDURE § 4408.

Res judicata bars both claims ***that were actually litigated and those that were or could have been raised in the first action***.  *Blonder-Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 323-24 (1972) (emphasis added).

In his 2021 Lawsuit, Plaintiff sued Liberty for direct and vicarious liability for violations under the TCPA for dates spanning from February 2020 through February 2021.  [Doc. 1-1] Case 2:21-cv-00223 MV-GJF.  The district court granted Liberty's Motion for Failure to State a Claim [Doc. 80] which was upheld by the Tenth Cir.  *See Escano v. Concord*, No. 22-2096, 2023 WL 4247703 (10th Cir. June 29, 2023).  The Amended Judgment was entered by the district

7

court on August 30, 2023 [Doc 120].  It is undisputed that: 1) Plaintiff in the 2021 Lawsuit and the instant lawsuit are the same, 2) Liberty was a defendant in the 2021 Lawsuit as it is here, 3) the district court entered a judgment in favor of Liberty for failure to state a claim under the TCPA and dismissed Liberty with prejudice which was upheld by the Tenth Circuit, 4) the cause of action in both cases – violation of the TCPA – is identical and 5) the timeframe of the alleged violations under the TCPA – February 20, 2020 – February 5, 2021 as alleged in the 2021 Lawsuit and – May 13, 2020 – January 26, 2021 as alleged in the instant lawsuit are the same.  Plaintiff's claims must fail under the principle of res judicata.

### b.   *Collateral estoppel:*

Like res judicata, collateral estoppel bars re-litigation in a subsequent suit, but differs in that the second suit involves a different cause of action.  *Parklane Hosiery v. Shore*, 439 U.S. 322, 317 n.5 (1979).  Collateral estoppel, also known as issue preclusion, precludes parties from re-litigating issues that have already been determined in a prior valid, and final judgment.  *See Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) ("When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in a future lawsuit.") (citation omitted.  The required elements for collateral estoppel under federal law are:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Dodge v. Cotter Corp.,* 203 F.3d 1190, 1198 (10th Cir. 2000) (citation omitted).

Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action

involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "A collateral attack is 'an attempt to avoid, defeat, or evade [a judgment], or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking' the judgment." *Harvey E. Yates*, 2014 WL 11512599, * 10, *citing Lewis v. City of Santa Fe*, 2005-NMCA-032, ¶ 10, 137 N.M. 152, 108 P.3d 558 (citation omitted).  "Collateral estoppel fosters judicial economy by preventing the re-litigation of ultimate facts or issues actually and necessarily decided in a prior adjudication." *Harvey E. Yates*, 2014 WL 11512599, * 10, *citing Shovelin v. Central New Mexico Elec. Co-op., Inc.,* 1993-NMSC-015, ¶ 10, 115 N.M. 293, 850 P.2d 996.

It is undisputed that: 1) the issues decided in the 2021 Lawsuit involved alleged violations under the TCPA during the February 20, 2020 through February 5, 2021 time frame.  [Doc. 1-1, ¶¶ 14-16] Case 2:21-cv-00223 MV-GJF and the issues alleged in the instant lawsuit also involve alleged violations under the TCPA during the May 13, 2020 through January 26, 2021 time frame. [Doc. 1-1, ¶¶ 44-60], 2) the 2021 Lawsuit was finally adjudicated on its merits [Doc 120], 3) Plaintiff and Liberty were parties in both lawsuits and 4) Plaintiff had a full and fair opportunity to litigate the alleged violations under the TCPA in the 2021 Lawsuit.  *See* docket sheet in Case 2:21-cv-00223 MV-GJF.  Thus, Plaintiff's instant lawsuit must be dismissed with prejudice under the principle of collateral estoppel.

## II.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST LIBERTY UNDER THEORIES OF DIRECT OR VICARIOUS LIABILITY.

Even assuming Plaintiff's claims are not barred under res judicata and/or collateral estoppel, Plaintiff's claims against Liberty must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### a.  *The Complaint Fails to State a Claim for Direct TCPA Liability Against Liberty.*

As described in detail below, the Complaint contains insufficient factual allegations to support a theory by which Liberty can be held directly or vicariously liable under the TCPA.  Direct

TCPA liability was explained by this Court in *Childress v. Liberty Mutual Insurance Company*,

No. 17-CV-1051 MV/KBM, 2018 WL 4684209 (D.N.M., Sept. 28, 2018), as follows:

> [W]ith regard to direct liability, "[t]he plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text." *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 39, 2015). Courts interpreting this provision "have held that the verb 'make' imposes civil liability only on the party that places the call or text." *Id.* (citing *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call."); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301-02 (D. Nev. 2014) (associating the party who 'made' the call with 'the party who actually sent the text message to [Plaintiff]'"); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call" and '[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was ... a separate provider of text-message based services ...") ).

*Id.* at *3. *See also Smith v. State Farm Mut. Auto. Ins. Co.,* 30 F. Supp. 3d 765, 771 (N.D. Ill.

2014) ("Direct liability under the TCPA . . . applies only to entities that 'initiated' the telemarketing

calls.") (citing cases and FCC decision discussed *infra*).

Accordingly, Plaintiff must allege some facts that plausibly suggest Liberty placed (*i.e.*,

initiated) the calls at issue.  As noted above, Plaintiff makes one vague allegation that during at

least one call, he spoke to a representative who said he was calling from Liberty, worked for

Liberty and the VSC he was offering was from Liberty.  *See* Comp. ¶ 22.  However, in his

enumerated detailed **The Calls** portion of the Complaint, there is absolutely no mention of any

conversation Plaintiff had with anyone, let alone someone from Liberty.  *See* Comp. ¶¶ 44-60.

Plaintiff appears to have answered three of the 13 calls and claims to have heard "at least two

seconds of silence at the beginning of the call, after he answered the call and said "hello"."  *See*

Comp. ¶¶ 56, 58, and 60.  As such, Plaintiff's claims against Liberty in so far as he relies upon claims for direct liability must fail as a matter of law and should be dismissed.

   *b.  The Complaint Fails to State a Claim for Vicarious TCPA Liability Against Liberty.*

   Plaintiff is also unable to establish any claim that Liberty is vicariously liable for the conduct alleged in the complaint.  In a declaratory ruling issued in *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act Rules,* 28 F.C.C. Rcd. 6574, 6582 ¶ 24 (2013) ("*Dish Network*"), the Federal Communications Commission ("FCC") clarified that the "TCPA contemplates that a seller may be vicariously liable under agency principles for violations of section 227(b) notwithstanding the absence of 'on behalf of' liability available for do-not-call violations under section 227(c)." *Id.* at 6594 n. 124.  However, the FCC, and numerous courts, have explained that such vicarious liability under Section 227(b) of the TCPA depends upon a showing that the caller was acting as an agent of the purported defendant. *Id.* at 6584 ¶28 (question turns on the "federal common law principles of agency.").  The FCC explained that such an agency relationship:

> may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information....  It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*See Dish Network*, 28 F.C.C. Rcd. at 6592 ¶46; *see also Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448 (9th Cir. 2018) (in a TCPA case, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act"); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, at *6-7 (S.D.N.Y. Nov. 30, 2015) (dismissing TCPA complaint which failed to plead facts to support agency).

A TCPA plaintiff asserting a vicarious liability theory "must plausibly allege that [the caller] … was acting as an agent of [the non-caller defendant].., *i.e.*, that [the non-caller defendant] … exercised control over, ratified or openly authorized [the caller's] … actions." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020) (*citing Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d. 1370, 1377 (S.D. Fla. 2014) and *Dish Network*, 28 F.C.C. Rcd. at 6574).

Thus, TCPA complaints which fail to adequately plead, in a non-conclusory way, an agency relationship fail to state a claim as a matter of law.  For example, in *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138–39 (E.D.N.Y. 2015), the court dismissed a TCPA claim where the plaintiff pleaded that the defendant was "responsible for making or causing the making of the text message calls" and "contracted … to make text message calls to consumers ['] cellular telephone numbers."  The *Jackson* court observed that while claims based on alleged violations of the TCPA need not be pled with particularity, "the [p]laintiff's non-conclusory allegations with regard [to] the agency relationship … fail[ed] to 'nudge' his claims … 'across the line from conceivable to plausible.'"  *Id.* at 138 ("In this regard, absent from the second amended complaint is any allegation[] that [the defendant] … had the power to give 'interim instructions' to [the caller]

…, or any non-conclusory suggestion of 'direction' or 'control'") (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555(2007)).

In *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d at 776–78, the court dismissed a case, similar to this one, in which the plaintiff alleged that a caller was acting for various insurance companies but failed to allege any facts to support the contention that the insurance carriers had appointed the callers as their agents. *See also Childress*, 2018 WL 4684209, at *4 ("Absent from the Amended Complaint is any factual content regarding the relationship between the initial caller and Defendant.  Mere conclusory allegations that the 'robot machine' belonged to Defendant, coupled with allegations that the initial call was transferred to Defendant's in-house telemarketer, are insufficient to establish that Defendant had the right to control the initiation of the telephone call to Plaintiff.  Accordingly, Plaintiff's allegations fail to plead any relationship, let alone an *agency* relationship, between Defendant and any other individual or entity sufficient to allege vicarious liability under Section 227(b)(1)(A)(iii)."); *Friedman v. Massage Envy Franchising, LLC,* No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, at *3 (S.D. Ca., June 13, 2013) (allegation that message sender "acting as an agent and/or employee of Defendants" was insufficient to establish an agency relationship); *Melito*, No. 14-CV-02440 (VEC), 2015 WL 7736547 at *7 ("[M]ere conclusory allegations that [the caller] … was [the defendant's] … agent ... fails to plead an agency relationship ... sufficient to allege vicarious liability under section 227(b)(1)(A)(iii) of the TCPA."); *Reo v. Caribbean Cruise Line, Inc.*, No. 1:14 CV 1374, 2016 WL 1109042, at *5 (N.D. Ohio Mar. 18, 2016) (dismissing TCPA vicarious liability claim where "the sparse allegations made … [did] not allege any facts that show that [the defendant] … had any power to give interim instructions or otherwise had any control over the performance of" alleged third-party callers); *Bank v. All. Health Networks, LLC*, No. 15-CV-213, 2015 WL

4645317, at *1 (E.D.N.Y. Aug. 4, 2015), *aff'd*, 669 F. App'x 584 (2d Cir. 2016) (complaint in which the plaintiff "allege[d] merely that the calls at issue were made 'by, or on behalf of, or with the authorization of the defendants'" was insufficient to state a vicarious liability claim); *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-532, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (complaint dismissed for failure to state a TCPA vicarious liability claim where the plaintiff did not allege that the defendant "controlled, authorized, or even knew about [the third party's] … phone calls or that [the defendant] … had any control over" the third-party caller and had "virtually no allegations regarding the relationship between [the defendant] … and … [the third party]").

In this case, Plaintiff's Complaint falls far short of alleging the sort of facts necessary to establish that an agent or any agent was acting as Liberty's agent with respect to the 13 calls alleged.  There are no allegations that Liberty had any contract with an agent or gave an agent the power to give "interim instructions" which is "the hallmark of an agency relationship."  *Smith*, 30 F. Supp. 3d at 776 (*citing* Restatement (Third) of Agency § 1.01 cmt. f(1) ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.")); *see also* Restatement (Third) of Agency § 1.01 cmt. g ("Performing a duty created by contract may well benefit the other party[,] but the performance is that of an agent only if the elements of agency are present.").

*Hossfeld v. Gov't Employees Ins. Co.*, 88 F. Supp. 3d 504, 510–11 (D. Md. 2015), demonstrates the difference between an adequately pleaded TCPA claim and this one.  In *Hossfeld*, the plaintiffs sued an insurance company (GEICO) for an automated call made by a third party "and then transferred . . . to a GEICO sales representative."  *Id.* at 510.  The court held that while GEICO could not be directly liable for the call, it could be vicariously liable based on allegations "that GEICO contracted with third-party telemarketers, created scripts for those telemarketers,

knew the third-parties were using automated dialing systems in violation of the TCPA, and had the third-parties make calls with those systems before forwarding the call to GEICO sales representatives." *Id.* (*citing Dish Network,* 28 F.C.C. Rcd. at 6592).

Similarly, another case in this district further highlights the differences between an adequately pled theory of TCPA vicarious liability, and the instant complaint.  In *Mestas v. CHW Group Inc.*, 508 F.Supp.3d 1011, 2020 WL 7385826 (D.N.M., Dec. 16, 2020), the TCPA plaintiff made "specific factual allegations regarding the relationship between" the alleged principal and agent defendants, including that (i) the phone numbers from which the calls originated were "assigned to and controlled by" the alleged principal; (ii) the callers utilized a script prepared by the alleged principal; (iii) the sponsor of the call was identified as "Support First, a name that … was personally approved by" the alleged principal; (iv) during certain of the calls, the caller identified the sponsor of the call as the alleged principal; (v) the alleged principal authorized and controlled the callers; (vi) the alleged principals allowed the callers access to information for the purpose of making the calls and entering customer information directly into the alleged principal's systems; and (vii) once the plaintiff initiated its lawsuit, the calls "suddenly ceased." *Id*. at *6.

The type of allegations made in *Hossfeld* and *Mestas* that demonstrate control by the alleged principal over the alleged agent, are conspicuously absent from the Complaint. Accordingly, the Complaint fails to establish that Liberty should be held vicariously liable for the alleged conduct of this unknown agent and thus fails to state a claim against Liberty.  Thus, all claims against Liberty should be dismissed, with prejudice.

**CONCLUSION**

For all the reasons set forth herein, Defendant, Liberty Mutual Group, Inc. respectfully request that the Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. 12(b)(6), with prejudice and award Liberty its attorney's fees and costs incurred.

Respectfully Submitted,

**ALLEN LAW FIRM, LLC**

*/s/ Meena H. Allen*
MEENA H. ALLEN
6121 Indian School Road NE, Suite 230
Albuquerque, NM 87110
(505) 298-9400
mallen@mallen-law.com

***Counsel for Liberty Mutual Group, Inc.***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 21st day of June, 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

Ruben Escano, pro se
2311 Ranch Club Road, Suite 2-180
Silver City, NM 88061

*/s/ Meena H. Allen*
Meena H. Allen